IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

OLANDO DESHUN GRAY                                                                                    PLAINTIFF

v.                                                  Civil No. 1:16-cv-01070

LIEUTENANT GREEN, Union County
Detention Center (UCDC); NURSE RICE,
UCDC; CAPTAIN MITCHAM, UCDC;
and DR. HOPKINS, UCDC                                                                               DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by the Plaintiff, Olando Deshun Gray, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendant Dr. Deanna Hopson's (incorrectly identified in the caption as "Dr. Hopkins") Motion for Summary Judgment. ECF No. 15. After careful consideration, I make the following Report and Recommendation.

## BACKGROUND

Plaintiff filed his Complaint on July 20, 2016, alleging Dr. Hopson was deliberately indifferent to his serious medical needs in retaliation for a previous lawsuit he had filed against her.[1] ECF No. 1. Plaintiff is currently incarcerated at the Union County Detention Center ("UCDC") in El Dorado, Arkansas. All of Plaintiff's allegations relate to incidents which occurred while he has been at the UCDC. He is suing Dr. Hopson in both her official and individual

---

[1] Plaintiff also alleges numerous other civil rights violations in the Complaint against other defendants none of which are relevant to the claim against Dr. Hopson. Plaintiff has another lawsuit pending in this Court – Civil No. 1:16-cv-01012 consolidated with Civil No. 1:16-cv-01022 - alleging Dr. Hopson denied him adequate medical care arising from the same set of facts. On January 5, 2017, I issued a Report and Recommendation recommending all claims against Dr. Hopson be dismissed with prejudice. Civil No. 1:16-cv-01022, ECF No. 14.

1

capacities. Plaintiff specifically claims Dr. Hopson "starting crushing up my IBprofiens so that It would be horrible for me too take and she hope that It would've stoped me from taking them, and when she got the lawsuit, she stoped giving me the IBprofiens". ECF No. 1. Dr. Hopson filed her Motion for Summary Judgment asserting she was never deliberately indifferent to Plaintiff's medical needs and never retaliated against Plaintiff for filing a lawsuit. In addition, Dr. Hopson claims her decision to discontinue ibuprofen was medically indicated and she was not responsible for his ibuprofen being "crushed up". ECF Nos. 13, 15.

To assist Plaintiff in responding to the summary judgment motion, I sent a questionnaire asking him to agree or disagree with various statements set forth by Dr. Hopson as undisputed facts. Plaintiff filed the questionnaire as his Response to the summary judgment motion on January 3, 2017. ECF No. 19. Plaintiff states he fell and "dislocated" his knee because the floor was slippery in the cell area in the UCDC. ECF No. 19. Plaintiff agrees on the day he was injured, November 7, 2015, he was examined, scheduled to see the doctor, given an ice pack and told to return if his condition worsened. Plaintiff also acknowledges on November 8, 2015, he returned to the nursing station where he had been examined and his vital signs were taken, he was given another ice pack, and told to elevate his leg and he would see the doctor the next day. ECF No. 19. Plaintiff admits his knee was x-rayed at SAMA Healthcare Services, P.A. around the same time although he is not sure of the exact date the x-ray was taken. ECF No. 19.

Plaintiff admits he was seen by Dr. Hopson weekly throughout the months of November and December of 2015 and Dr. Hopson continued to treat him for his knee injury through February of 2016. ECF No. 19. Plaintiff admits Dr. Hopson continued the ibuprofen and told him to do range of motion exercises but he asserts this did not help him. ECF No. 19. He claims "I told her I was still in pain she did nothing to help me professional she just kept giving me Ibuprofen 400, she said the help that Im asking for will cost them money (physical therapy, M.R.I. real pain meds

2

real medical assistance) and she said sorry she can't do these thing for me and If she do she would have to stop givine me the Ibuprofien, I said so stop giving them too me then!". ECF No. 19.

Plaintiff also states "I was forced to shut complaing about my knee pains, and was put In the hold In the nurse station 4 times, by Captain Mitcham, Nurse Rice, Dr. Hopson and was told that If I keep complaining about my knee pains's that Im gonna stay in the hole for the remaining of my time that I have here in this jail away from visitor kiosk, phone calls and E.T.C. and that's retailiation, pain, suffering!"[2] ECF No. 19. Plaintiff asserts Dr. Hopson "continued the Ibuprofien hoping that I'll eventually shut up about my knee pains, but I can't and didnt and thats why I filled out this lawsuit form from the wrong doing of the jail nurse and guards, Dr." ECF No. 19.

In his Response Plaintiff identifies "Nurse Rice and nurse Jill as the individuals who gave him the crushed up ibuprofen. He also claims "a new nurse that worked here and quit I didn't get her name" failed to dilute his ibuprofen. ECF No. 19. When asked to describe in detail how he believes Dr. Hopson violated his federal constitutional rights Plaintiff states "lack of medical assistance, denied of real pain meds, pain and suffering, drawing and having my blood drawn from S.A.M.A. Health center when I was the wrong Person, they was suppose to draw blood from Orlando Turner and I'm Olando Gray. I was denied of an knee brace physical therapy denied of, why did I suffer like this when this jail has real Dr and real nurse's that's able too help me. She Denied me of an M.R.I. and all that I've stated for 8 -9 months while I was pain and suffering." ECF No. 19. Plaintiff claims "my knee slips out of place if I move the wrong way, my knee aches real bad when the weather changes now as if I've developed authurites, my knee slips and pops out of place if I lay down at night on It the wrong way now, and due to her denying me of physical therapy, real pain meds, M.R.I. my knee has heald wrong way". ECF No. 19.

---

[2] Plaintiff has not submitted any evidence to support the allegation in his Response (ECF No. 19) that he was "put in the Hold....4 times" by Dr. Hopson.

**LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

1. <u>Official Capacity Claim</u>

Section 1983 provides a federal cause of action for the deprivation, under color of state law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that a defendant acted under color of state law and they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Dr. Hopson are treated as claims against Union County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e*., that the custom was the moving force behind the constitutional violation.

*Id.*, 725 F.3d at 828 (citations omitted).

Plaintiff's only mention of official capacity liability against Dr. Hopson is found in his Complaint where he placed an "x" beside the blank for "both official and personal capacity". ECF No. 1. Plaintiff has not presented any evidence of an unconstitutional policy or custom of Union County that contributed in any way to a violation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against Dr. Hopson in her official capacity fail as a matter of law.

   2. Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Dr. Hopson acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

Dr. Hopson has not argued Plaintiff did not initially suffer from a serious medical need. Instead she claims at some point during her treatment Plaintiff's knee improved and was healed. Based on the pleadings and exhibits submitted by both Plaintiff and Dr. Hopson, I find Plaintiff was diagnosed by Dr. Hopson as requiring treatment for his knee and therefore Plaintiff has shown he suffered from an objectively serious medical need.

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). Deliberate indifference can manifest by prison doctors in their response, or lack thereof, to the prisoner's needs. *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).

In this case Plaintiff admits he was promptly seen by medical staff following his injury and Dr. Hopson examined, treated, and issued orders for Plaintiff regularly for eight months in an attempt to treat his injured knee and knee pain. ECF No. 19. Although Plaintiff claims he should have undergone an MRI, had access to physical therapy over and above the range of motion exercises suggested by Dr. Hopson, and "real pain meds" (ECF Nos. 1, 19), this only demonstrates Plaintiff disagrees with her medical decisions regarding his care and pain management. The law is clear - mere disagreement with treatment decisions by a physician does not rise to the level of a

constitutional violation. *Id.* at 499. Consequently, Plaintiff has not shown Dr. Hopson was deliberately indifferent to his medical needs and his claims against her fail as a matter of law.[3]

    3. Retaliation

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation in order to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994).

To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.*, 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

After seeing Plaintiff weekly for complaints of knee pain in February without any objective findings of a problem, Dr. Hopson ordered "[n]o more Dr. calls on [complaint of] knee pain". ECF No. 15-1 at 24. In addition to noting no objective findings of a medical issue, Dr. Hobson also wrote Plaintiff "[h]as been documented dancing; doing push ups on toes – it is fine". ECF No. 15-1 at 24. Despite this order, Dr. Hopson continued to see Mr. Gray for other issues and continued to prescribe him ibuprofen for his complaint of knee pain. ECF No. 15-1 at 25.

---

[3] Because Plaintiff has not shown Dr. Hopson was deliberately indifferent to his medical needs, it is not necessary for the Court to address the issue of whether Plaintiff submitted medically verifiable evidence he still suffers from a knee injury.

On May 7, 2016, Plaintiff filed a grievance which contains the only reference to crushed up pills in his records. ECF No. 15-1 at 31. In that grievance, Plaintiff complains a "new nurse" failed to dilute his "crushed up meds". ECF No. 15-1 at 31. This grievance makes no reference to Dr. Hopson. On May 23, 2016, Dr. Hopson examined Plaintiff again and reported his knee pain had "resolved", that he had "no knee pain", and he was "OK to go to population." ECF No. 15-1 at 29. On June 13, 2016, Dr. Hopson discontinued her order for Mr. Gray to receive ibuprofen but indicated he could take ibuprofen if he purchased it from the commissary. ECF No. 15-1 at 29, 30. Based on the record, there is no evidence Dr. Hopson controlled how the medication was administered or that Dr. Hopson ordered Plaintiff's ibuprofen to be crushed up. As a result, Dr. Hopson is entitled to judgment as a matter of law on Plaintiff's claim of retaliation.

## CONCLUSION

For the reasons stated, I recommend Defendant Dr. Deanna Hopson's Motion for Summary Judgment (ECF No. 15) be **GRANTED** and all claims against her be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 20th day of January 2017.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE